We're going to proceed directly to our third case of the day, and that is number 16-3682 on In Re Howmedica Osteonics Corp. Mr. Carty? May it please the Court? My name is Rob Carty. I represent the petitioner, Howmedica Osteonics Corporation. I wish to reserve 12 minutes for rebuttal. At issue here is whether the district court exceeded its authority by disregarding valid form selection clauses and sending a case to a venue that nobody had agreed to. The district court disregarded the form selection clauses for three reasons, but two of them I think are particularly worth talking about today. The first was the presence of non-signatories to the form selection clauses, and the second was the presence of a signatory whose agreement specified a different venue. And today, we ask the Court to rule that neither of these factors authorizes the district court to discard all of the form selection clauses and pick a totally different venue. Atlantic Marine, by its terms, was limited to those who were parties to the form selection clause, correct? Yes, that was the factual situation that it dealt with. And as the Court, it seems to take pains to limit its holding to that group with good reasons, because otherwise the 1404A analysis would allow taking account of the private interests of parties. If folks are not parties to the contract with the form selection clause, don't those private interests need to be taken into account? Doesn't that require some divergence from the strict terms of Atlantic Marine? If it does, and there are reasons why we don't believe that it does, but if it does, then those private interests should only be taken into account with regard to those non-signatories, but it shouldn't let the signatories off the hook. And the reason that I bring this up is because this is going to be a very, very common, in fact it is a common, it's almost a universal factor where in a non-compete situation you're almost always going to have, I think you always will have, a non-signatory. Now does the presence of that non-signatory suddenly make the venue selection clause evaporate? I don't think that that's what Atlantic Marine meant to say. On the other hand, isn't it very unfair to bring in someone from a totally separate jurisdiction far away into, for example, New Jersey who is totally unaware that if something goes wrong, I may be brought into New Jersey without knowing about the prior venue provisions? If they are wholly unaware, but the non-signatories here were aware. In what sense? Yeah, I'm sorry. Were they aware at the time that these contractual agreements were entered into? No, but I don't think that should be the standard. The standard should be, because this is not a situation where. What does foreseeability mean? Our position is that these non-signatories made themselves closely related parties bound to the contract through their conduct. Wait a minute. Did the non-signatories know of the venue provisions at the time, let's say, that they were hired in California? That's what we're saying. When the non-signatories hired our employees at that point. They knew that if they had to go to court, they would have to go to court in New Jersey? That's right. Do they have the record established? Well, that's what we've alleged, and nobody has denied it. And, in fact, GSO filed a lawsuit in California to get these clauses invalidated. But the New Jersey suit hadn't been filed, so they knew what the allegations were. That doesn't mean that when they were hired, they weren't aware of the venue provisions. There are a number of declarations in the record, and if one looks at the totality of these declarations, there's no question that HOC's former employees were poaching HOC's customers while they were still employed by HOC. And there's also no question that GSO was simultaneously talking to at least some of those same doctors. Does that get used to the closely related concept, though? I mean, how much does your argument depend on these folks being closely related? Well, at the very end of the day, what we would like this court to recognize, at the very least, is that you can't let, even if you don't buy, that GSO and DePue are closely related parties. Even if you don't buy that, there's still no reason to let the signatories off the hook. Is that an argument for severance? Possibly. That's one option. There's another option as well. I'm interested why you didn't raise that in the district court, though. We did. You did. You said, it's okay, we'll just stay with the parties who agreed to the New Jersey venue. All the others we can deal with separately. No, our position was that everybody had to be in New Jersey. That's always been our position. However, the point about – No, did you raise the issue of severance before the district court? I wasn't involved in the lower court, but my understanding, Your Honor, is that it was at least tangentially raised. But in any case, you would have no problem with that? Well, I think that it's not our ideal situation, but I think that it's a workable situation. Better that than go to California? Yes. Okay. And under 1404 transfer, the transferee court would apply the law of the transferor court on a – You mean outside the context of Atlantic Marine? Yeah. I suppose so. I'm just talking about choice of law situation, not transfer. I suppose so, except in this case, there's a choice of law provision in the contract. Okay, which means California law would apply. Well, no, it would mean that New Jersey law would apply, at least to the employees. All right. I'm sorry. Wait a minute. The non-compete agreements, is there not a policy in California, which is maybe even a constitutional policy against these types of agreements? California – Let's say it's a matter of public policy in California. California takes a hard line on these kinds of agreements. But wouldn't it enforce its public policy versus an ordinary contract in New Jersey? Not being totally well-versed on California law, I will say that that's my understanding, but I can't concede that because I really don't know the California law on this. What I do know – But that's not one of your concerns. Correct. What I do know, Your Honor, is that in all of these employment contracts, the parties agreed that New Jersey law would apply, except one guy who agreed that Michigan would apply. Is it a given that Golden State is – there's not personal jurisdiction over Golden State in New Jersey? I don't think so because, again, our contention is that they're a closely related party through their conduct. Other than the closely related party doctrine, if we don't agree with you that it's a closely related party, do you concede that New Jersey lacks jurisdiction over Golden State? I'm not aware of any information in the record that would support that. I can't say that it's not there, but, again, I'm just going from what our position is, which is that it is the closely related party's doctrine that confers the jurisdiction. If Golden State is a necessary party, wouldn't that mean that that litigation necessarily proceeds in California, not New Jersey? Well, first of all, they're not a necessary party, and I can explain that. But if they were a necessary party, it might mean that the case would have to be transferred elsewhere. I don't know whether it would necessarily have to be in California. But it may not be able to proceed in New Jersey. But the fact is, GSO is not a necessary party. Now, GSO will tell you that. And while that phrase does appear in that motion, it was never meant to say that GSO was an indispensable party for Rule 19 purposes. It was simply a phrase thrown in there based on the pleadings in California, which suggested that GSO was an employer of these five individuals. As it turns out, GSO has since backed off on that. But we do not take the position that the case cannot go forward without GSO, particularly since GSO is not an employer. Separated apart from the considerations of public interest that would apply under Atlantic Marine and the private interest that, aside from closely related doctrine, I understand you to agree would apply to the non-parties in a traditional court-to-law analysis. Where we have all those parties in the same litigation, don't we need to go a step further and to consider the judicial efficiencies and make a determination about that as it circumstances in Rolls-Royce? I think that courts will always make those determinations. However, if what we're ultimately talking about is letting signatories off the hooks of their forum selection clauses that are supposed to be enforced almost every time, then I don't see how that general concern can overcome the enforceability of a venue selection clause. I think Atlantic Marine supports you on that point. But what if the other parties are closely related to the litigation, so the whole thing has to be kept together? If they are closely related, Your Honor, do you mean in terms of a closely related parties doctrine? Yes. Oh, okay. Then in that case, the case would be if they're closely related to the employees, the signatories, then the case ought to stay in New Jersey because everybody is subject to those same venue selections. What's the right point in time to make that closely evaluated determination, that is, about foreseeability? You seem to say it's not at the time that the clause is entered into by the parties, that it can be at a later time, even after the commencement of litigation, where it becomes foreseeable that they're going to be subject to litigation in the contractual forum. What's your authority for that? Don't the cases suggest that the foreseeability relates to the point in time that the contract is actually entered? I don't think so. I think that the cases that we cite in our brief dealt with situations where somebody had signed an employment agreement some time ago, somebody else came along and induced them or aided and abetted them in breaching their employment contract, and it was foreseeable at that time. At the time of the conduct, the party who was aiding and abetting knew that the agreement was in place, looked at it, knew that it had a forum selection clause, and went through with the tort anyway. At that point, it's foreseeable. And if we have a different rule, then a joint tort fees, like what we have in this case, will never be subject to a forum selection clause in a noncompetitive case. So you're saying there's an obligation on the part of the new company to inquire whether there is a forum selection clause, and failure to do so, they're deemed to know? I do think that it's wise for them to do that. I'm talking about on the foreseeability issue. Right. What's the rule? And I think that if they do inquire, here's what I will say. If they do inquire and they do know about it and they proceed anyway, at that point, it's totally foreseeable. Yeah. They're pretty common, aren't they? I mean, noncompete clauses are pretty common in this area of business. They are. Yeah. They are. They're almost universal, I would say. Pharmaceutical and medical suppliers. Highly competitive. So it's very common. So if I'm going to hire somebody like that, that's one of the things I'd want to know. Is there a – I don't want to put words in your mouth, but that's something that's common in the industry. So I would want to ask before I hire somebody, do you have any provision that says I might have to have my case heard in a different state or in Texas or New York? I agree. Is there any evidence that that's what happened here? What we have is allegations that they did know. We've got a ton of evidence. Nobody on the other side of the case has ever denied this. And I think that at this stage of the litigation, it's appropriate for the court to look at the allegations, take them at face value, and then if the defendant in this case provides evidence that would tend to negate that allegation, at that point you deal with it. There was no evidence to negate it, no. And candidly, you're never going to see a denial here. What is the – since we're obliged to look at the judicial economy and administration issue on this, what would be the consequences if we agreed that at least four cases should stay in New Jersey and the others should be severed? Where would we be then in terms of this whole measure or measures going forward? There would be two cases going on instead of one. But in terms of judicial economy, I think that the hurdle has been set so high with Atlantic Marine that cases are routinely severed in this manner. And I think almost by definition, a mere severance of a case into two separate actions is not extraordinary enough under the Atlantic Marine standard to overcome the enforceability of the underlying agreements. You know, the terminology that Atlantic Marine uses over and over again in the opinion is unmistakable. I mean, the case said that these clauses must be honored except in extraordinary circumstances, said that the public factors must overwhelmingly disfavor the agreed-upon venue. Simply, I'd say that to answer your question, where are we if we look at that? I don't think we're over that hurdle. And I don't think that it's enough to negate the – What about a 10-defendant case where only one of the defendants is a party to the form selection clause? I missed the first part of your question. Say there's a 10-defendant case and we've got one subject to the form selection clause. Is your position just an absolute type of rule that if you have someone who's not a party, that the default then is to sever rather than look at the efficiency of that for the judicial system, for the parties, and look at the potential for transfer? That's a tough question to answer because I do think that it has to be case by case. And, you know, so I'm not advocating necessarily a bright-light rule that says that that's never a – that severance is never going to be good enough. But I would say that it has to overwhelmingly disfavor the agreed-upon venue. Are you familiar with Dayhoff v. Hines? I am. Is there a case in which we have that the form selection clause in the agreements can be enforced only by the signatories? Yes. So in that case, the other, the non-signatories, cannot be compelled to appear in the jurisdiction of New Jersey under this particular case, under Dayhoff? Under Dayhoff, yeah. Was that before the district court? Did the district court consider that case? I don't know whether the district court considered Dayhoff. What I would say is that that was a situation where the non-signatories were trying to enforce an arbitration agreement and a form selection clause against signatories, and this court said you can't do that. Notably, one thing about Dayhoff was is it noticed that there were potentially many cases that it would split up into. The court split it up. But it clearly said that non-signatories cannot be compelled to appear in a foreign state where there are no form selection clauses. That would compel them to appear. Well, there's also a case that came out before that, Coastal Steel, and Coastal Steel was more like this case where you had a signatory trying to enforce a form selection clause against a non-signatory, and in that case the court said you can do it. Counsel, you have some thoughts now. You're welcome to share them or perhaps rebuttal and sort of lay this out for your adversaries as well. If we conclude they're not closely related parties and we have a situation distinguishable from Atlantic Marine, what is the framework? What is the test that we should be applying? Do you suggest we look to mirror the circuit test and proceed with a sort of three-step inquiry with efficiencies as the last step? Or is there some other framework that you suggest ought to be applied? If there are no closely related parties, let me give you the quick version and then I'll sit down. If there are no closely related parties, then I think what has to happen is the form selection clauses still need to be enforced after giving it an Atlantic Marine type analysis. So barring these extraordinary circumstances that Atlantic Marine contemplates, if you don't have that situation, you've got to enforce them. And that may require either a severance or an outright dismissal. But the signatories should not be left off the hook unless Atlantic Marine would allow it. That's the rule I would propose. Without any particular consideration of efficiencies at any given point? Well, I think that they – what I meant to say was that, yes, I think that's part of the Atlantic Marine framework. But Atlantic Marine requires that they be more than just ordinary. They have to be extraordinary, those factors. Thank you. Is there anybody else? May it please the Court, my name is Anthony Howe. I represent the respondent, the Pew Orthopedics. The respondents have agreed among themselves that I will take the lead and I'm asking the Court for permission to have 15 minutes. And then the remainder of the time will be split as to the other two respondents, if that's acceptable. That will be granted. I start with the proposition that the plaintiffs chose to bring this California-centric dispute in New Jersey against seven defendants, three of whom are non-signatories to the forum selection provision, and one of whom has a forum selection provision which binds the plaintiff under Supreme Court's authority to sue that individual in Michigan. That's what the District Court was presented with. There was no request to sever. Well, it's not too late, is it? Well, it is too late for purposes of this proceeding because I want to get to really the heart of it. And I didn't hear one mention of that in the argument. We are here on mandamus, and that is a very high standard. It's a mountain for the petitioners to climb. And the District Court is a thorough and alternative analysis of the dispute in front of it. And we submit that the court did not, under any circumstances, engage in an unauthorized exercise of judicial power, which is the standard required. In the Chesney v. Dictionary of Columbia case, the Supreme Court said that to issue mandamus, it must be clear and indisputable, number one, and even if you get over that hurdle, it must be appropriate in the circumstances. But the court did not, the District Court did not consider the option of severing the non-signatories from the New Jersey case. The court did, and if you read the answer, the court said nobody asked it. And when I look at this case, all of these allegations are interrelated. This is a claim that the five individuals, not four of them, and the two corporate defendants conspired to violate the non-compete and to engage in other tortious activities. That is the claim. And if you look at the standards that the court would have had to consider for severance, you first of all have to look at whether or not there was a party seeking severance. And nobody sought severance. Everybody believes that this case relates to activity which is combined and must be tried for judicial economy in one place at one time. It's all the same witnesses. It's all the same, both party witnesses and third party witnesses. So, everything is interrelated. And it would be contrary to fundamental principles of judicial economy and certainly the public interest under the 1404A standard to sever this case. The Rolls-Royce case makes clear it's becoming more and more common, and I think Mr. Carney was referring to it, to have parties in different jurisdictions, to have parties in California, in New Jersey, in Michigan, maybe in Texas, all somewhat related to litigation, but it's just not a perfect world. So, you have to do something. I agree wholeheartedly with that proposition, Your Honor. So, if we look at Judge Higginbotham's decision in Ray Rolls-Royce, what the court said is, yes, there are circumstances where you have parties. One of whom may have a forum selection clause and others that may not. In those circumstances, you necessarily must have a different analysis from Atlantic Marine, which was dealing only with the two contracting parties. And what Judge Higginbotham said is, in those cases, you must look to the 1404A factors, because there are non-signatories, they have rights, and therefore you must consider for them, not the contracting parties, the private interests along with the public interests. Now, Atlantic Marine says always you must consider public interests. Do you suggest we dispel that test, or is there another test that you suggest, if we don't think that Atlantic Marine applies the final on all fours of the situation? But just setting it aside completely and doing a 1404A analysis doesn't give appropriate weight to the mandate of the Supreme Court in Atlantic Marine. What is the right framework? What test should be applied? Well, I mean, I'm hesitant because... Soon we get to that point. Our position is you should never get to that point. Because now, you see, by virtue of this conversation, we're outside mandates. We're now talking about something that would normally be discussed on an appeal. This is not an appeal. The district court had a very thorough analysis. This court may think that there was another way to get there, but you cannot say that she so clearly abused her discretion as to be a usurpation of judicial power. So that's my first answer. But to get to the court-specific question, I think you have to look, first of all, at this case, because the departing factor in this case is that we have conflicting forum selection provisions. So under the petitioner's theory, right, the closely related doctrine can't be carved up in saying you're only closely related to New Jersey. So if you accept, and we do not accept for a minute that we are closely related, that is, to Pew or GSO, under the standards of this court, but if you accept that for a moment, the court was confronted with this conundrum that you have conflicting provisions as among the individual defendants and you have conflicting closely related forum analysis as to the corporate defendants. And so, therefore, in that instance, and we don't have to go to the broader questions in this case, in that instance... Did the court take into account Atlantic Marine's preference for the contracting parties, that is, the forum selection clause in private contracts over public factors? Absolutely. The court looked at Atlantic Marine. The court did two things. It said, assuming that I apply the Atlantic framework, I'm not going to consider... That would apply to the four plaintiffs in this case. You're right. I'm not going to... Sorry, the four defendants. Yes, I'm not going to consider the private interest. She didn't do that, but she said, given what I'm confronted with, which is non-signatories with conflicting forum selection provisions, I have to consider something. And so, if I just consider the public interest, this case is so heavily weighted to California that I find that I should transfer under the direct authority of Atlantic Marine. You couldn't write, I submit, a law school question that would get more directly to what is an unusual circumstance contemplated by the court in Atlantic Marine. That analysis, one that takes account of the convenience, the location of the witnesses and the non-parties as part of the analysis, is not one that is, by its terms, limited to public interest, the way the Supreme Court discussed in Atlantic Marine. That reverts to a traditional type of 1404A analysis. And if we think that the district court here applied the wrong test and didn't account for the Supreme Court's admonition that the forum selection clause should be audited all but the most exceptional cases, why wouldn't that rise to the level of mandamus? Well, because in this case you have non-signatories and you have somebody that has a conflicting forum selection provision. In fact, the whole point of departure is to get to the petitioner's position, you have to act directly in conflict with Atlantic Marine. Because you have to say Mr. Nordyke is required to come to New Jersey, even though he has a specific agreement that requires forum admission. You don't have to say it's required as a result of the forum selection clause. Perhaps there are other considerations like judicial efficiencies, for example, or something that may take account of whether or not there is a necessary party or there is or is not personal jurisdiction or the number of parties who are subject to the forum selection clause versus the number of parties who don't. Or the number of parties who are part of the gravamen of the complaint versus those who are more political, for example. I submit that Atlantic Marine does not subsume all the other rules of civil procedure. So, rule one requires all courts to look at efficiency. And I think Judge Higginbotham in Rolls-Royce said you've got to look at judicial efficiency. And so the court did. The court assumed, arguendo, that Atlantic Marine framework applied and looked at what it was confronted with, which is non-secretary's conflicting provisions, and said I'm going to look at purely public practice, things like judicial economy, where the non-party witnesses are, where the public interest is in the resolution of the dispute, and applied those standards which Atlantic Marine specifically contemplates. So, I would submit that the court having done that, it cannot be said that the court went beyond its judicial powers. We're now talking about second-guessing or thinking that the court should have applied its discretionary authority differently, which is not the standard. I can't remember how the Fifth Circuit took jurisdiction in Atlantic Marine. I'm sorry, in Rolls-Royce. It was on mandamus. It was on mandamus, yes. And it's a good point, Your Honor, because what the Fifth Circuit said is what was incorrect in terms of what the court did was that it did not consider in the context of non-signatories the private and the public interest of the non-signatory defendants. It said there's a mandate to consider those things when you are confronted with a party that is not signatory to the forum selection clause. But what about the parties themselves? If we look at the public interest and we look at our analysis for at least a step of it to the parties, to the contract, do you agree that the public interest here would not be exceptional? There are the types of convenience, the witnesses and locations of parties, the very things that were rejected in Atlantic Marine. Your Honor, if the petitioners, as most of us do, because it's an area in which I practice, had decided to sue only in New Jersey the four individual defendants, then the answer is you would not look at the private factors and absolutely there would be no argument as to jurisdiction over those four individuals in New Jersey. The problem is they chose to bring a case, understandably because it's all interrelated, against more than those four individuals and once they do that the paradigm changes. It's exactly what Atlantic Marine contemplates and this court, the district court, did something that most district courts wouldn't do. She analyzed, the judge analyzed this in two different ways in a very thorough method and so now all we're talking about is did the district court maybe not consider the factors appropriately and that's not for mandamus. I would also like, before my time is up, to say... Are you suggesting we have no mandamus review? Well, we do make an argument that the petition is out of time so we do not think the court has jurisdiction. We also do not think that the standard is met in any respect by the arguments which are arguments that one might hear on appeal but are not the subject of the high standard that is required for mandamus. But some other courts have taken these cases on mandamus. They have, but where there's a procedural type defect, not where you're just considering whether the court balanced the right standards under 1404. Do you think this opens the door to contesting these transfer decisions? Every time. On mandamus? Exactly. Because the appellate court may, or the parties may, the party that loses may decide that it can contest the discretionary reasons that are given by the trial court. I would agree with that. The other side of the coin is that a judge can take a case and have a hearing and pack it and ship it off in 24 hours and the appellate court has no power of review over that decision. I'm not suggesting that, Your Honor. I'm suggesting that if we're talking about the jurisdictional issue, which I assume the court is talking about, that has to be done in a timely fashion. 30 days is not timely when you're talking about a mandamus petition. It has to be done sooner than that. That's an appellate timing. It's not for mandamus. And once, as Judge Slobeta in Ray, United States, said clearly, once the transferee court has acted, which this court did, then it's too late. There's no retention. That was a week. No, it wasn't, Your Honor. I thought it was a week from the date of the decision until the file was shipped off to California. The decision was August 26th. The file was shipped on September 2nd. The court acted, issued an order on September 2nd, issued another order on September 7th, and then there'd be other proceedings in that court. Could I just address the closely related doctrine for just one minute? Actually, a couple questions. As you know from sitting in the audience, we've been somewhat flexible with time. I take it as a tribute to the interesting issues raised in these cases. In Ray, U.S., it's not by its terms limited to procedural questions. These seem to suggest that it is, aside from any argument that what is raised here might be deemed procedural, why should we take in Ray, United States, to be limited in terms of jurisdiction to procedural questions? Well, I would say this. I think that in Ray, United States dealt with a procedural defect. But the court in that case said, nonetheless, a mandamus petition must be filed with dispatch. And it was in that case that this court gave us essentially a directive to the Eastern District of Pennsylvania to establish a rule, and the rule is that it must be done within 20 days in the Eastern District of Pennsylvania. But in Ray, United States, Judge Slovis has said it has to be done, that something has to happen before the transferee court acts. Once the transferee court acts, then this court loses jurisdiction. We didn't say before transfer. We said before the transferee court proceeds with the case. Correct. And what happened here after transfer was it was state. There hasn't been proceedings in the case. I would disagree with that. There were proceedings. There were two scheduling orders issued, and then there have been further proceedings in which the case that was transferred has been deemed related to the GSO case, has been consolidated, and there have been filings in that case. So a case has proceeded procedurally. If I may just address the closely related doctrine. Again, we're on mandamus, so we have for this court to view that, which is their theory as being the basis of mandamus, you have to say the judge really so clearly abused her discretion as to be a basis for the writ. The judge looked at, first of all, the magistrate decision which the court adopted said, this isn't a situation where the closely related doctrine applies. The court's decision is rooted in this court's view that that doctrine is one of contract principle. And that means either you're an intended third-party beneficiary, or you're so closely related as to be a principal or an employee, a director of the entity that is contracting, or that there are certain equitable principles based upon an equitable estoppel theory of direct benefits. Outside of that, this court has not recognized the concept of closely related in the way that the petitioners are seeking to apply it. It is not. In fact, this court has directly said in Dayhoff that it isn't sufficient simply to allege a tort that's related to the contract, and that then would create a situation in which you are subject to the forum selection provision. So, neither DePue nor GSO we submit under this court's specific authority was subject to the forum selection provision. Before you conclude, can you just clarify something in the record? Because Mr. Carty indicated that the issue of severance was raised in the district court, or that he believed it had been. You said that it was not, and that you also, I think, indicated that one of the judges, the magistrate or district judge here, had directly addressed that in their opinion. Was it raised? Was severance raised in the district court? And where in either of these opinions is that expressly addressed? If I may, Your Honor, severance was not raised. There was no motion to sever. There was no request to sever. And in her answer, Judge Chetsky specifically says that 29 of her answers in this court, while petition now suggests the appropriate course of action may have been to sever the claims, it appears at no point have any parties sought to sever the action. And in light of the parties' implied desire to keep the case together and the normal interest of justice that encouraged resolution of all the claims in the signal, in a single action, the district court did not, sur response, sever the claims. I mean, I think it's very clear. Thank you. Do you have a question? Yes. If your view on jurisdiction and mandamus is the correct one, that gives a lot of leeway, a lot of discretion to the district courts in interpreting Atlantic Marine when there are parties that are not subject to a foreign selection clause. And so I would think that means that there would be probably conflicting decisions in the district courts. And so the question is, that's okay. I mean, you would, if I'm correcting it, if I'm saying it correctly, and that because it's simply a transfer motion, the courts of appeals just should not get involved except in the most unusual circumstances. That is correct, Your Honor. If I may on that point quote Judge Higginbottom. He said specifically, our district court judges are best situated to balance the competing interests and prudently exercise their judgment in determining how the business of the federal courts is to be allocated, given the contracted choice of forum it's due. Such management is indeed their hallmark. It should be left to the district courts. And I do want to perhaps follow up with one point that Judge Chechi made. If this court takes a different view, which I submit it cannot under the standard, you're opening the door to something very concerning, and it's the following. If you consider the Pew Orthopedics position, we are not the employer. So there's an employer, there's a distributor that has some agreement with the employer, and we are the manufacturer that has an agreement with the distributor. We do not accede, and there's no evidence that we were involved in any way in reviewing contracts or doing anything. But we are being hauled into New Jersey. We're an Indiana corporation. And so what we would then require is discovery. So this would then start a whole round of having discovery into, well, did this court actually take place? What was the knowledge? And I think that that is something the court should consider. We do not want to go down that road. There was significant evidence presented to the court on affidavits, as it should have been. The court made its decision, and this court should defer to the appropriate application of the court's discretion under 1404A. Going to Jim's circuit point, what you're espousing could end up in a situation where the framework, the test, how it's articulated, whatever modifications may be appropriate to Atlantic Marines, judicial efficiencies, where district courts are applying a wide array of different approaches, how would there be the potential for that to be settled in a given circuit, given the approach that you suggest taking as to jurisdiction in transfer motion cases? Well, I think, you know, over time, the law will develop in the right cases where a district court has clearly and indisputably got it wrong, and therefore, as in In re Rolls-Royce, the circuit courts can express their view of what the district court should be doing. But that doesn't mean that in every case, a circuit court should take up the case on mandamus. It doesn't. It doesn't make matters more onerous for you, does it? I mean, if the plaintiffs here proceed against the signatory individuals, and then proceed against you in California, it would be the same thing as if you had to appear in the New Jersey suit. No, I think it's significantly more onerous. It's duplication of effort and it's duplication of discovery. But we're not involved in the New Jersey litigation anymore. In other words, the case in New Jersey proceeds solely against the individual plaintiffs, the ones who have the Foreign Selection Clause. But it would involve the same witnesses, which would include all of the physicians. But it doesn't involve you. Well, that would be true at that point, but it would be highly prejudicial if there then was a subsequent case filed in California or in Michigan, in which these issues were then litigated again or in a different way. It would subject us to the potential of conflicting decisions and duplicative litigation. It is contrary to Rule 1's view and the Fifth Circuit's view of what is necessary, which is when you have claims where the allegations are that the parties engaged in a conspiracy, they should be tried in the same place at the same time in the same court. Thank you. Good afternoon. My name is Jeff Brown, attorney for Golden State Orthopedics at GSO. I appreciate the opportunity to address the court now. I want to bring something up. I'll be very brief. Five to seven minutes, please. I think we need something more definitive. Seven. We'll go with seven. We'll go with seven. Thank you. All right. I want to simply highlight GSO's perspective on something here, because if you look at what this petition seeks, the relief that it asks for is for this court to send the case back to the District of New Jersey with an order that the district court in New Jersey maintain it on its docket. Not sever it, but maintain this case on its docket. To do that, this court needs to find that the petitioner has a clear and indisputable right to an order that necessarily binds GSO to four forum selection clauses out of the five to which it is not a signatory. And the way we get there logically, if you look at what GSO's original motion sought, GSO moved to dismiss this action or, in the alternative, transfer it based not only on the public interest factors or the 1404 factors, but also on the idea that venue is improper in New Jersey and that there is no jurisdiction, no personal jurisdiction of the District Court of New Jersey over GSO. What if you severed? Pardon? What if you were severed? If we were severed, it would contradict the position taken by the petitioner that GSO is a necessary party. And as we just heard, that phrase did indeed appear in the motion to amend. It would contradict that position, but would it make things more onerous for you? For GSO? Yes. Moderately. For the most part, our litigation would be in the Northern District of California, where both Falk and Chechi agree it should be. What our involvement would be in New Jersey, assuming that the New Jersey case goes forward with the four individuals, I don't know, but I'm assuming there would be significant involvement in terms of discovery. But it's hard to say. There's no doubt that the bulk of the litigation would be centered in California. Is it your position that GSO is an indispensable party under Rule 19? It's not a position we've taken. I don't think I'd disagree with it. Our position is there's no personal jurisdiction over GSO. And the contention that we were a necessary party was made by plaintiffs, and I don't think I've formed a contention one way or another. So the California court made a determination that you are a closely related party? The California court made that comment. I don't know that it was a holding. What they did was put the case on ice, basically, until the New Jersey court could figure out whether or not it had jurisdiction. And it did so under Minetti-Ferro, which has been explicitly rejected by this court in Dayhoff. So you're correct. The California court made that comment. I believe not only is it incorrect, but it's also under a standard that this court has rejected. So if you get back to what we asked for, part of our core argument was that there was no personal jurisdiction over GSO. In its opposition, Petitioner did not contest any of the facts upon which that argument was made. We submitted affidavits, which, along with the individual defendant's affidavits, established that GSO does no business in New Jersey, does not travel to New Jersey, its principal does not go to New Jersey, et cetera. There are no contacts. The Petitioner did not attempt to dispute any of that, but rather moved immediately and exclusively to the idea that jurisdiction is founded entirely based on the forum selection clauses contained in four, but not all five, of the individual's employment agreements. So there's no way on this record, it's not even contested, that if GSO is not bound by these four out of five forum selection clauses, that there's any jurisdiction over it. There was not even an attempt to show minimum contacts other than through the forum selection clause. What that means for today is that unless the Petitioner shows a clear and indisputable right to an order holding that GSO is bound by the closely related doctrine, GSO cannot possibly be held to continue with this litigation in New Jersey. Now, I want to touch on the mandamus issue a little bit. There's two things that have come up so far. One is the idea of jurisdiction and the timing of the transfer, and that was touched upon earlier. I don't want to go back to that. Once this Court does review something, though, the standard of review on a writ petition is different from that of an appeal. The Petitioner, once they're here and granted and the door's open to them, they've got to show they have a clear and indisputable right to the relief sought, and that the District Court committed something beyond simply weighing the factors incorrectly, but rather that they engaged in a usurpation of power. In this case, what the Petitioner needed to show was that clear and indisputable right to an order enforcing the closely related doctrine. Now, the District Court... But it doesn't have to be enforcing the closely related doctrine. It needs to be whatever the right test is. And say, you know, it includes recognition of the admonition of the Supreme Court in Atlantic Marine as to the public interest in enforcing the settled expectation of at least contract parties and interests of other parties and judicial efficiencies. I mean, they're separate apart from a closely related doctrine. If a District Court conducts its analysis in a way that, in addressing the Atlantic Marine test where only public interest should be at play, discusses private interest as part of that analysis, and, in the alternative, engages in a general 1404A analysis without taking account of the mandate of Atlantic Marine, why don't we have there something that rises to the level of granting mandatement in the failure to apply a test, articulate one, or apply it in a way that takes account of the interest that, between the Supreme Court and the rules, the Court needs to apply? Sure. If I understand the question correctly, I believe the answer is that, in the scenario you've described, the District Court has acted in the alternative. And that's exactly what happened here, is the District Court looked at the public interest factors. And Atlantic Marine does not foreclose consideration of the public interest factors. It says the calculus is shifted to where the forum selection clause will be given great weight. But it does not say that you cannot consider the public interest factors. And the District Court held that looking at the public interest factors and giving due consideration to the forum selection clauses signed by the four employees, it found that transfer was appropriate. And I believe Mr. Haller walked through some of those steps. But its analysis of the public, of these supposedly public interest factors, in fact, takes account of convenience of witnesses, of parties, in other words, things that the Supreme Court has identified as appropriately characterized private interest factors. I believe that the District Court judge actually segregated its analysis and walked first through those things that are recognized as public interest factors, including local interest, public policy interest, and talked about that. And then in the alternative went on to point out that if, indeed, due to the conflicting forum selection clauses or the fact that some parties are non-signatories, if due to that, Atlantic Marine does, indeed, leave the door open for consideration of private factors, then it walks through the private factors as well. I would point out that some of the District Court's reasoning, in fact, the first part of Judge Chetty's opinion, deals with what have been recognized as public factors. And so I think it was, in a way, in the alternative. First, public factors alone compel transfer. And second, if we also look at private, they would compel transfer as well. If you agree that efficiencies are something that needs to be considered in the case, then is there an obligation on the part of the District Court to sui sante consider severance? In other words, it's not raised by a party. Is it thereby waived? Or is it something that is part of its analysis, taking account of the Atlantic Marine interest, of private parties, the non-contract parties' private interest and efficiencies that a District Court is obliged to consider? I don't know that they're obliged to consider it, but it does seem that those factors did come into play in the Court's decision. If, as you mentioned, judicial economies are one, then that is served, as the District Court, both the magistrate and the District Court judge pointed out, by having this entire case decided in the one forum where every party, which petitioners chose to name, would be subject to jurisdiction and where venue would be proper, and that is the Northern District of California. So, whether or not interests of economy compel the District Court to think about severance, I don't know that they do, but the Court did clearly consider judicial economy. And so, I guess to finish, apart from the weighing of these factors, though, is still situated as a non-signatory. GSO has no context in New Jersey, and for GSO to be held, leave aside severance for a moment here, for GSO itself to be held in court in New Jersey, petitioners had to show a clear and indisputable right to an order applying the closely related doctrine to bind GSO to the forum selection clauses. The District Court looked at that. By my count, the collective briefing, including Judge Cecchi's answer, identifies more than 25 cases providing guidance on the closely related doctrine. Those cases coming out of the District of New Jersey overwhelmingly followed this Court's guidance from Dayhoff, from Boreas, from DuPont, attending to a narrow construction of closely related doctrine based on contractual issues, third-party beneficiary or expectations. It does focus on the temporal proximity. There are cases cited in our papers that are consistent with Atlantic Marine in that if a forum selection clause is a contractual agreement by the parties to weigh certain private factors, they must be thinking about that at the time they get into it for it to bear that contractual weight. Judge Cecchi, I'm sorry. We're way over time. Okay. We're going to move on. Thank you very much. Thank you, Your Honor. Good afternoon. My name is Jed Marcus, and I'll be speaking for Michael Nordyke and the remaining California individuals. In the few moments that I have, what happened in this case, and I think it's very important to note that Palmetto, whether or not it's actually the employer, and that's for another day, it did not argue. When it sued Michael Nordyke in New Jersey and brought in the other California individuals, it did not claim that the Michigan forum selection clause was unenforceable or invalid or somehow ineffective. In the complaint and in the amended complaint, they simply ignored it. Rather, they argued that Michael Nordyke is actually bound not by the Michigan forum selection clause, but by the New Jersey forum selection clause. You haven't objected. I understand it was raised below, but you haven't objected to personal jurisdiction in your papers. Oh, yes, we have. In this appeal. The focus of the issue of personal jurisdiction was certainly objected to at the district court level, and they didn't address it. Judge Tetchy and Magistrate Falk specifically held that they were not making findings as to personal jurisdiction or to venue in and of itself because they were transferring the case. But unlike Golden State, that's not something that you've raised in this appeal. I didn't need to in this appeal because personal jurisdiction was not an issue that was addressed by the court below. But certainly, to the extent that personal jurisdiction was an issue raised below, we did object to it. And if we ever have to file an answer, in addition to our motion to dismiss, which was filed on the basis of 8B2, 8B3, I'm sorry, 12B2, 12B3, and 12B6, we would do so again. You did say that he had never come into New Jersey. I did not say he had never come into New Jersey. I think Mr. Nordyke stated in his affidavit that he either never came into New Jersey or maybe came in once or twice, but only as an employee. Otherwise, other than that one time, coming in as an employee, he never did any of his work in New Jersey. He lives in California. All his work was in California. All the customers were in California. There is no question that there is no personal jurisdiction in this case for Mr. Nordyke. What is your position as to whether New Jersey substantive law applies if the case remains in California? If the case were to remain in New Jersey? New Jersey substantive law. No, I do not believe New Jersey substantive law would apply. I don't believe Atlantic, I believe Atlantic Marine, to the extent that it seeks to enforce the forum selection, doesn't necessarily mean that an argument regarding conflicts of law can't be made. And we made that argument below to the court. The court didn't address that issue because it didn't have to. My position is if this case is transferred to California, California law will apply. He lives in California. He works in California. His family is in California. Doesn't that point up one of the reasons that where there are parties to a contract, that because of the very concerns about form shopping that were identified in Rolls-Royce, with some of the Supreme Court indicating what would happen in terms of choice of law provisioning, that that's something to be avoided if we want to honor the principles of the court? And I think that's an excellent point, which is why this gets confused. Mr. Nordyke doesn't have a New Jersey forum selection clause. Mr. Nordyke doesn't have a choice of law that says New Jersey. Let's talk about the other individuals. The other individuals. The point I'm getting at is once you threw two forum selection clauses into play, you created an inherent conflict. Basically what they said is either Atlantic, they want to say that both Atlantic Marine applies to Mr. Nordyke and that the closely related doctrine applies. In my view, that can't be. You can't claim that a person with a forum selection clause in another state, that that forum selection clause should be ignored simply because it's more convenient for Halmedica to sue this guy in New Jersey. Now, with respect to the choice of law issues, there are many different ways employers handle this. Not every employer, whether national or otherwise, you know, has choice of law provisions that sends employees across the country to resolve disputes. I represent employers. There are contracts that say the choice of law of the state in which you work. But what happened here is as follows. What Atlantic Marine says, and we forgot what it says, that we are here to honor the bargains for expectations of the party. Okay? And in Mr. Nordyke's case, and I'm going to get to the other individuals. In Mr. Nordyke's case, what they basically said was ignore that. Halmedica gets to choose which forum selection clause is going to apply. At what point have you sought to transfer to Michigan? At no point. Now, they may be, for the first time in their reply papers, I'm sorry, in their petition, they said, well, if Nordyke didn't want to be in New Jersey, he should have filed a motion for severance. My argument is there's no obligation on my part. Obviously Halmedica believed it was important to bring everybody into the same place. Severance, and basically the onus is not on me. If venue is improper, the onus is not on my clients to file a motion for severance. I have the right to file a motion to dismiss or, in the alternative, a motion to transfer. One thing was clear is. What if the judge had decided that the case belongs in New Jersey? I guess I'd be here as the appellant. I mean, if it takes. You'd be in the other position. Of course I would, but that doesn't mean that I'd be right. With respect to closely related. Now, everyone seems to forget what Atlantic Marine also says, which is that any inconvenience with respect to the private interests are foreseeable at the time of contracting. This notion that I, as Mr. Nordyke, or I as anybody else, should somehow foresee that I'd be dragged into a lawsuit, even though I have no derivative rights or obligations under that contract, simply because five years from now I get involved in a lawsuit or somebody claims it's torturous interference, but certainly with respect to Mr. Nordyke. And I think to see how little, how Medica considers its own contractual obligations. At some point in the reply papers, after we had argued, how could Mr. Nordyke foresee that he would be dragged into New Jersey when he has a Michigan foreign selection clause? And they argued, well, it is immaterial what Nordyke thought about his own agreement. No, that's exactly wrong. It is material what Nordyke thought, because what's foreseeable is what's foreseeable when Nordyke signed the contract. Whether it was really bargained for or not is another question. But also, as the judge pointed out, there is no evidence, and we pointed this out, that there's no evidence that, you know, these are all guys at the same level. There's no evidence that they knew what was in each other. Why would I, who have a Michigan contract, necessarily know what's in somebody else's contract? And there's no evidence to the contrary on that. There's plenty of affidavits. So I guess we're over time. Okay, well, thank you very much. Thank you very much. Why don't you address at the outset what significance we should accord what appears to be the fact that severance was not requested? Yeah, Your Honor, it seems like HOC is getting excoriated for not seeking severance in this case. Well, the one guy who you would have expected to seek severance was Mr. Nordyke. He never did it either. I think so we can point fingers at one another and get into all that, but at the end of the day, I'm pretty sure that the district court has complete discretion to manage its docket, and that includes severing the case sua sponte if that's what the interests of justice require. It may have discretion, but does it have the obligation to raise that sua sponte and address it if it hasn't been requested by a party? Well, let me answer that this way. The alternative in this case was to simply scrap the whole thing, scrap Mr. Nordyke's otherwise binding forum selection clause and do the same with the other four employees. That is not permissible. These clauses are supposed to be court needs to find a way to enforce them. With regard to request for severance, the alternative before the district court are all or nothing is to New Jersey. They could all be in New Jersey or everyone can go to California. And if those are the only two choices before the district court, does it really rise to the level of the standard for us to grant mandamus relief to say that the district court made the wrong choice, considering the many different factors that go into that decision? It's our position that the district court doesn't have discretion to cancel these forum selection clauses unless the public interest factors identified in Atlantic Marine overwhelmingly disfavor the agreed upon venue. If that standard isn't met, and it's not here, there's no question in our mind about that. If that standard is not met, then the court has to find a way to enforce them. The way that we offered the court was to find Mr. Nordyke and along with GSO and DePue closely related parties because, frankly, they are. They conspired. They colluded. They worked together. They all knew what the score was. They all knew that these forum selection clauses were out there and would precipitate litigation in New Jersey. So to answer your question, that is the option that we gave the court, but that doesn't foreclose the court from seeking other ways to enforce these clauses, what the court cannot do. What would we say? I'm trying to think of the same avenue as maybe Judge Krause is thinking of. What would we say to the district court if we were to send this case back, that we didn't give proper weight to the Atlantic factors, Atlantic Marine factors, that did not consider the forum selection clauses or did not give sufficient weight to that factor? Sure. I mean, there are actually – there's a list of things. I mean, it was really, in a sense, incumbent on you to raise the issue if you wanted to. It's not really incumbent on the district court to say, you know, maybe we should consider severance in this case. I don't think that's a district court's obligation. I think it's incumbent on the court to find a way to enforce the clauses unless they are – unless the public interest factors overwhelmingly disfavor it. So is it a matter that the district court improperly weighed the factors? I think that the district court took ordinary factors that are ordinary by definition. They're going to be present in nearly every case and called those extraordinary and erroneously called them extraordinary and went with that. By combining not only the public interest factors that are normally recognized, but also by throwing in, oh, and by the way, we've got non-signatories present. We've got a signatory who has a competing forum selection clause. All that stuff went into the mix. None of it was appropriate. I don't see where I could point to error on the part of the district court. The district court did not – well, the mandate of Atlantic Marine is pretty clear. You know, I mentioned it before, I won't repeat myself, but it is loaded with adjectives about just how rare these cases are. And what the court did was it took a number of, you know, like I say, and we talk about it in our brief, but it's factors that are going to be present in every case or nearly every case. They're common. They're not going to be enough. This is not – and I think this court has the power to rule as a matter of law that this kind of thing isn't going to cut it. And I would ask the court to give the district courts of this circuit some guidance on that. Because if this is the kind of thing that passes for extraordinary factors that can overcome a forum selection clause, then Atlantic Marine is basically meaningless. Is it enough for us to grant Vandema's relief to say there are factors here that the district court should have identified and expressly considered and given way to as independent steps in the analysis? Is that enough? Or given that in our circuit, granting rid of Vandema's also requires a finding of irreparable injury, a likelihood of irreparable injury, do we need to go a step farther and say, well, this is what the test ought to look like, the Rolls-Royce test or something else, and then we ourselves have to go ahead and apply it in the first instance to make the determination about the likelihood of irreparable injury? This court? Yes. In the first instance? Well, I think this court in the first instance is going to have to do that because right now it doesn't seem like there's any guidance out there. Well, if we would need to go to that step, that is to articulate a test and then to actually apply it on our own in the first instance to make a determination about likelihood of irreparable injury, how could we say that we would necessarily come out differently than the district court? Even if the district court didn't perhaps identify that interest in the settled expectations of the parties as a freestanding one or be entirely clear about whether it was in fact limiting its analysis under the Atlantic Marine portion to public interest because it does talk about the schedules of surgeons and the interruptions of folks who would be witnesses, things that seem more classic private interest. But those kinds of areas don't speak to the larger point of a likelihood of irreparable injury, right? I agree. I think that the likelihood of irreparable injury here is 100 percent because we're not going to get the benefit of our bargain through no fault of our own if this case remains in California. So we need to conclude that the district court used the wrong test and that applying the correct test or as we formulated it, that there is a likelihood that the case should remain or would have remained in New Jersey. Yes, and I would go one step further because I would ask the court to also make a ruling that just because you have non-signatories in the case, that's no reason to blow up the whole thing and send it to a venue that nobody's agreed to. And just because you have two parties, two signatories whose foreign selection clauses select a different venue, again, that's not enough to blow the whole thing up. Find a way to enforce that. You could have sued four defendants in New Jersey and the others in other areas where you could have personal jurisdiction. So to that extent, why isn't it a problem that you've made here? Well, we think that we were justified in doing that. I understand why you would want to do it, but given the fact that you only had four defendants with the foreign selection clause in New Jersey, you could have done it that way and avoided all of this. Had we done it another way, this case wouldn't be in front of this court. I can't deny that. That said, I don't think that we're in the wrong. I don't think it's a question of right and wrong. I think it's largely a question of how much litigation the federal courts want to have over this transfer decision. And at least until fairly recently, most of these decisions have not been reviewed in any way. Some have for various reasons. I think our position is that what the court did, it didn't just abuse its discretion, it didn't have discretion to do it because these factors that I just laid out, again, just because you've got non-signatories, just because you've got more than one foreign selection clause, is no reason to decide that none of them apply. They have to, according to the Supreme Court, they have to be applied. They presumptively govern. They are presumptively valid. And they can only be overlooked under extraordinary circumstances that just aren't present here. Because here, again, the factors that the court considered are going to be so common. Can you address briefly the question of the timing of the challenge to the transfer and the implications for our jurisdiction? Okay. In terms of the number of days that it – okay. There is no specific deadline for seeking mandamus. In this case, the transfer order came down on Friday. By Monday morning, the case was gone. Under the Tuoni case, the District of New Jersey takes the position that it doesn't have jurisdiction and won't entertain any motions. So at that point, you know, we talked to our client, hashed it out, figured out what we were going to do. Thank you. We thank counsel for an excellent argument all around in traveling in for this today. And in view of that excellent argument, it's the fact that the court provided the transcript of the clause to be shared. We'll take the case under advisement. Thank you.